Curia, per

Butler, J.
The report sets out very clearly and fully, all the facts out of which arise the points of law on which the judgment of this court is required. When analysed, the grounds of appeal present the naked question, were the plaintiffs entitled to recover the land by a perfect title acquired under the statute of limitation ? If they can connect their possession by Joseph Fullarton’s tenancy, with that of their ancestor, Samuel Lacey, the statute confers on them a good title. In other words, they must support the proposition that Joseph Fullarton’s possession was that of Samuel 'Lacey, as long as he lived, and after his death, it was cast on them, and continued without interruption, for five years, under the first entry and disseisin.
In the fall of 1813, Fullarton was put in possession of the land as the tenant of Lacey, and was to hold coextensively with Lacey’s grant; which, of itself, could confer no right, but could be resorted to only to indicate the extent of the possession under it. This, in legal. contemplation, was the entry of Lacey, and was a disseisin of Lowndes who, at the time, had the true title. Lacey died in 1814, without title in himself at that time, but occupying such a position as might have given him title if he had lived. Had not his heirs a right to be remitted to his rights, or rather to take the position which he occupied, and from which rights might be acquired 1
For the purpose of eliciting the true point in the case, let *204 It be supposed that the child of Lacey was on the premises, an infant at the time, and incapable of asserting her claim to the possession, It was said that, under such circumstances, Lacey having no right to the land, none could descend to his heir. And it is true, he had no title. Bnt he had such a possession as might ripen into title. This is an interest not of such immaterial consequence gs to be unnoticed by the law. Nor is the possession of the heir, thus acquired, to be regarded as a distinct possession, on his own entry, to be tacked to that of the ancestor, but a continued possession that is referable to the original entry and disseisin. So much, according to English law, is this possession of the heir respected, notwithstanding the ancestor may have been a dissei-sor and wrong doer, that the true owner’s right of entry on it, after the death of the ancestor, would be barred, and he Would be driven to his ejectment to enforce his right of entry ; although by simple entry, he could have evicted the ancestor in his lifetime. For the law presumes that the possession which is transmitted from ancestor to heir is a rightful possession, until the contrary is shewn, and therefore the mere entry of him who has the right will not evict the heir.
In every complete title to lands, there are two things necessary ; viz. the possession, or seisin, and the right and property therein. If the possession be severed from the property, as if A. has the jus proprietatis, and B, by some unlawful means, has gained the possession, this is an injury to A. for which the law gives a remedy, by putting him in possession : but it does so by different means, according to the circumstances of the case. Thus, as B, who was himself a wrong doer, and has obtained the possession either by fraud or force, has only a bare, a naked possession, without any shadow of tight; A, therefore, who has both the right of property and the right of possession, may put an end to this title at once, by the summary method of entry. But if B, the wrong doer, .¿lies, seised of the lands, then B’s heir advances pne step *205 further towards a good title. That is, he has not only a bare possession, but also an apparent jus possessions, or right of possession. (Run. on Eject. 42 ; 3 Cruise Dig. 433 ; Smith vs. Lorillard, 10 Johns. R. 338.) This is a recognition of the heir’s possession, continued as well as derived from the ancestor. It is inheriting not only the title, but the position by which a title is acquirable. A possession not taken by the option of the heir, but one that is cast on him by the operation of the law.
It was contended, however, that this doctrine only applies to the actual possession of the heir, and not to the constructive and substituted possession of a tenant. This, on examination, will be found to be a fallacy. The lease of the landlord to the tenant descends to the heir, or goes to the executor for the benefit of the heir. By this the tenant could be made to pay rent after the death of his original landlord — as much so as if the landlord had been the true owner of the land. The liability of the tenant to pay rent, is not surely destroyed by the death of the landlord. Take, for instance, the case under consideration. FuJlarton was to pay rent for the land as long as he continued on it. Could he not have been compelled to pay it after the death of Lacey? In an action against him, could he have disputed his liability to pay the rent that was due? If not, his tenancy would inure to the benefit of the heir, and his possession would be considered as that of the heir. A recovery on the lease would be equivalent to an acknowledgement of tenancy to the heir, after the death of the ancestor. After Lacey’s death, his heirs could have recovered the land from the tenant by the lease under which he entered, although they might not have been able to recover it from another. In this point of view, Ful-larton’s possession may be regarded as the uninterrupted and continuous possession of Lacey and his heirs; and not as the disconnected possession of the ancestor and the heir, oí-as the separate possession of Fullarton, after the death of *206 Lacey. As long as Fullarton continued in under the lease from Lacey, he could not acquire any available title in himself. The grant which he took out in his own name could confer on him no right; as his possession would not be referred to that, but to Lacey’s lease, under which he entered and had held.
The case is then reduced to this ; had Fullarton five years adverse possession under Lacey’s grant, as against Lowndes? He was in from the fall of 1813 till 1814, holding, as he acknowledged on the stand, for Lacey’s heirs ; or rather, saying that, during that time, he would have delivered possession to Lacey, if demanded. In the fall of 1818, the statutory title became perfect, and was good for all the land which Ful-larton was in the actual or constructive possession of; that is, all that lay within Lacey’s grant, except what was in the actual occupation of others. And, after that time, Mrs. Williams, being a minor, could not be deprived of any of the land by adverse or collusive possession of any one, until she attained full age. In other words,, any possession acquired by McAliley, after the fall (October,) of 1818, could not avail him, as against the plaintiffs.
As it regards the land which he was in the actual possession of before plaintiff’s possession had ripened into a title, it must be regarded in a different point of view, to be noticed presently. Before I advert to that point, I will return to an argument relied on to shew, that Mrs. Williams’s possession never could have ripened into a right, by the trespass of Fullarton. It was said that, although Fullarton would not be allowed to prejudice her right and title to the land, where such right and title existed, yet, when the future acquisition of it depended on his continuing to trespass for her, he was at full liberty to stop trespassing for her benefit to the prejudice of the true owner. To this it may be replied, that if the minor’s possession, at the time of the death of her father, were not altogether rightful, as against Lowndes, it’ was a *207 possession which was, at least, recognized and sanctioned by law, until eviction by action. It does not seem that Fullar-ton knew of Lowndes’s grant, but always supposed that he held for Lacey under his grant. As long as he continued in possession, he would be regarded by the law as holding in the relation in which he entered. He was a centinel over the rights, or, at least, possession of his landlord, and could not be permitted to betray or jeopard them by acquiring title in himself, or attorning to another. Whatever others might have done, he will not be allowed to deny the claim of the one under whom he entered. This principle of law is founded in a great principle of morality that pervades all the fiduciary relations of life ; that good faith, where it is honestly reposed, shall not be violated to the prejudice of the one who reposes it. Fullarton’s possession must, therefore, be regarded as the possession of Mrs. Williams.
After October, 1818, Mrs. Williams had an actual possession of part, and a constructive possession of all the land lying within her father’s grant, except what McAliley was in the actual occupation of previous to that time. Or, (to put it in a different form,) at that time, she may be supposed to have bought all the land which Fullarton was in the possession of; and it is clear, that Fullarton was not in the possession of that occupied by McAliley. For, as to that, Lowndes could not be regarded as having it in possession. McAliley occupied such a position, as would enable him to acquire title against Lowndes himself, unless evicted before the expiration of five years. This possession controuled Fullarton’s constructive possession, and, to its extent, has ripened into a title in McAliley ; hut heyond it he has no right, by virtue of any possession acquired after October, 1818. It seems that he did not shew, or perhaps was not allowed to shew, how much land he had in actual occupation previous to the above time; and he must therefore have a new trial, to enable another jury to find what that possession was, and to find for the plaintiff all beyond it.
Gregg 8f McAliley for the motion; Eaves Sf Thomson, contra.
The motion is granted only so far as regards McAliley. As it regards the other defendants in the case, the motion is refused unanimously.
Richardson, Evans and Earle, JJ. concurred.